UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN FISHMAN, | Case No. CV 14-4823 MWF(JC) |
| Plaintiff, | ORDER (1) DISMISSING SECOND COMPLAINT WITH LEAVE TO AMEND; (2) DENYING MOTION TO DISMISS AS MOOT; (3) DENYING MOTION FOR PERMISSIVE JOINDER; AND (4) DENYING PETITIONS FOR DECLARATORY JUDGMENT AND RELATED WRITS/ REQUEST FOR SPEEDY HEARING RE SAME |
| v. | |
| CHARLES WILLIAMS, et al., | |
| Defendants. | |
| | [DOCKET NOS. 61, 66, 82-87] |

I.    **BACKGROUND AND SUMMARY**

On July 16, 2014, Steven Fishman ("plaintiff"), who is in custody at the Federal Correctional Institution, Terminal Island ("FCI-TI"), is proceeding *pro se*, and has been granted leave to proceed *in forma pauperis*, filed a Civil Rights Complaint ("Original Complaint") pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) against the following FCI-TI and Federal Bureau of Prisons ("BOP") officials:  (1) FCI-TI Warden Charles Williams; (2) BOP National Director Charles E. Samuels; (3) BOP Western Regional Director Juan D. Castillo; (4) Senior Attorney-Advisor, BOP

Los Angeles Consolidated Legal Center, Corinne M. Nastro; and (5) BOP National Inmate Appeals Administrator Harrell Watts. The Original Complaint essentially alleged that all such defendants violated and conspired with one another to violate plaintiff's Fifth Amendment right to equal protection by discriminating against plaintiff based upon his gender in connection with his custody level classification and resulting housing assignment. Plaintiff sued all defendants in their individual capacities only, and sought monetary, declaratory, and injunctive relief.

On September 15, 2014, the assigned United States Magistrate Judge ("Magistrate Judge") screened and dismissed the Original Complaint and granted plaintiff leave to file a First Amended Complaint ("First Screening Order").

On October 6, 2014, plaintiff voluntarily dismissed defendants Williams, Castillo, Nastro, and Watts from this action.

On October 31, 2014, plaintiff filed a First Amended Complaint ("First Amended Complaint" or "FAC") with attached exhibits ("FAC Ex.") against defendant Samuels, Former BOP Director Harley G. Lappin, and multiple unnamed individuals. Plaintiff essentially alleged that defendants' inmate classification policies violated equal protection. Plaintiff sued defendants in their individual capacities only, and sought monetary, declaratory, and injunctive relief.

On September 21, 2015, defendants Samuels and Lappin filed a motion to dismiss the First Amended Complaint for failure to state a claim, which plaintiff opposed.

On October 27, 2016, the Magistrate Judge screened and dismissed the First Amended Complaint, granted plaintiff leave to file a Second Amended Complaint and denied the motion to dismiss the First Amended Complaint as moot ("Second Screening Order").

On November 4, 2016, plaintiff filed the operative Second Amended Complaint ("Second Amended Complaint" or "SAC") with attached exhibits ("SAC Ex.") and an attached declaration of plaintiff ("Fishman Decl.") suing two

defendants: Samuels and Lappin. Plaintiff essentially alleges that defendants established, implemented, and/or perpetuated an inmate classification policy which contravened the BOP anti-discrimination policy and regulations and deprived plaintiff of equal protection. Plaintiff sues defendants in their individual capacities only, and seeks monetary, declaratory, and injunctive relief. (SAC ¶¶ 8, 10, 69-89).

On January 10, 2017, defendants filed a motion to dismiss the Second Amended Complaint for failure to state a claim ("Defendants' Motion" or "MTD"). On February 17, 2017, plaintiff filed an Opposition ("Opp.") with an attached exhibit ("Opp. Ex. A"). On March 31, 2017, defendants filed a Reply.

Also pending before the Court and addressed herein are: (1) plaintiff's Motion for Permissive Joinder pursuant to Federal Rule of Civil Procedure 20 ("Joinder Motion") filed on January 27, 2017, with an attached Declaration of Samuel Cohen ("Cohen Decl."), which seeks to add Mr. Cohen as a plaintiff to the instant action, and which defendants opposed on April 3, 2017; (2) plaintiff's Petitions for Declaratory Judgment ("Petitions") filed on June 2, 2017 and August 2, 2017; (3) plaintiff's Motions for Speedy Hearing on the Petitions ("Speedy Hearing Motions") filed on June 2, 2017 and August 2, 2017; and (4) plaintiff's Writs of Praecipe to the Clerk Requesting Docketing and Scheduling of the Petitions and Speedy Hearing Motions ("Writs"), filed on July 13, 2017 and August 2, 2017.

First, the Court agrees with and adopts the First and Second Screening Orders, and finds that the Magistrate Judge properly dismissed the Original and First Amended Complaints with leave to amend for the reasons discussed therein and properly denied the motion to dismiss the First Amended Complaint as moot.

Second, the Court concludes, based upon its screening of the Second Amended Complaint, and for the reasons explained below, that the Second Amended Complaint fails adequately to state a claim against defendants and that

1    dismissal of all claims against defendants with leave to amend is appropriate.

2    Third, in light of the foregoing determination, Defendants' Motion is moot
3    and is denied as such without prejudice.

4    Fourth, plaintiff's Joinder Motion is denied for the reasons explained below.

5    Finally, plaintiff's Petitions, Speedy Hearing Motions, and Writs are
6    likewise denied.

7    **II.    SECOND AMENDED COMPLAINT**

8    **A.    The Screening Requirement**

9    As plaintiff is a prisoner proceeding *in forma pauperis,* the Court must
10   screen the Second Amended Complaint, and is required to dismiss the case at any
11   time it concludes the action is frivolous or malicious, fails to state a claim on which
12   relief may be granted, or seeks monetary relief against a defendant who is immune
13   from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C.
14   § 1997e(c).

15   When screening a complaint to determine whether it states any claim that is
16   viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would
17   when evaluating a motion to dismiss under Federal Rule of Civil Procedure
18   12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation
19   omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the
20   Federal Rules of Civil Procedure.  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th
21   Cir. 2013).  Under Rule 8, a complaint must contain a "short and plain statement of
22   the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
23   While Rule 8 does not require detailed factual allegations, at a minimum a
24   complaint must allege enough specific facts to provide *both* "fair notice" of the
25   particular claim being asserted *and* "the grounds upon which [that claim] rests."
26   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and
27   quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
28   (Rule 8 pleading standard "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation") (citing id. at 555).

Thus, to survive screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citations and quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At the screening stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015). The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted); see also Mangiaracina v. Penzone, 849 F.3d 1191, 1193 n.1 (9th Cir. 2017) (taking take judicial notice of jail regulations in connection with review of screening dismissal pursuant to 28 U.S.C. § 1915A); Wilhelm v. Rotman, 680 F.3d 1113, 1116 & n.1 (9th Cir. 2012) (when screening complaint pursuant to 28 U.S.C. § 1915A, court may accept as true facts from

complaint and supporting documentation, including complaint exhibits) (citations omitted); <u>Diamond v. Pitchess</u>, 411 F.2d 565, 566 (9th Cir. 1969) (court may consider matters properly subject of judicial notice in assessing whether *in forma pauperis* complaint should be summarily dismissed).

    *Pro se* complaints are interpreted liberally to give plaintiffs "the benefit of any doubt." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If a *pro se* complaint is dismissed because it does not state a claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. <u>Cafasso v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

    **B.**    **Second Amended Complaint Allegations, Exhibits, and Matters Properly Subject to Judicial Notice**

        **1.**    **Pertinent Incarceration History**

    Plaintiff is currently serving a 20-year sentence at FCI-TI based upon a 2009 conviction in the Northern District of Oklahoma on multiple conspiracy charges, and has been an inmate at FCI-TI at all relevant times. (SAC ¶¶ 7, 12-15; Fishman Decl. ¶ 1). In December 1990, plaintiff was incarcerated for approximately two weeks at the Federal Prison Camp at Eglin Air Force Base in Florida ("FPC-Eglin") based upon a different federal criminal conviction. (Fishman Decl. ¶ 2).

///
///
///
///

## 2. Pertinent BOP Policies and Regulations[1]

### a. BOP Institutions

The security levels of BOP institutions generally are classified as "minimum, low, medium, high, and administrative" for male inmates, and "minimum, low, high, and administrative" for female inmates. (BOP Program Statement P5100.08 [FAC Ex. B at 213-15, 220]).

FCI-TI is designated as a "low prison facility." (Fishman Decl. ¶ 1). As such, FCI-TI, among other things, generally has "controlled movements" for inmates (*e.g.*, requires inmates to move from one location to another "within a 10 minute period") and permits "open movements" only for limited periods at meal times, has "gun towers and perimeter barriers" which make it feel like "a highly restrictive prison" (and causes plaintiff additional stress), and houses "violent offenders, gang members, sex offenders, and inmates who have made threats to government officials, as well as inmates with serious psychiatric and psychological impairments." (Fishman Decl. ¶¶ 3, 5-6).

FPC-Eglin – a "minimum" security level BOP facility – had no "controlled movements" for inmates, had a "far higher" inmate-to-staff ratio and "far less invasive" inmate monitoring, had neither gun towers nor perimeter barriers, did not house dangerous inmates like FCI-TI, and consequently "felt more like a college campus" and had a "less restrictive and far more favorable" environment than a low prison facility. (Fishman Decl. ¶¶ 2-6).

### b. Inmate Security Designation and Custody

---

[1]The Court takes judicial notice of the BOP policies/program statements/portions thereof which are referenced throughout this Order as they are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2); Mangiaracina, 849 F.3d at 1193 n.1 (taking judicial notice of jail policies); United States v. Thornton, 511 F.3d 1221, n.5 (9th Cir. 2008) (taking judicial notice of BOP policy/program statement). To the extent such policies/program statements are attached as exhibits to the Second Amended Complaint, the First Amended Complaint, and/or Defendants' Motion, the Court may cite to such exhibits for ease of reference.

## Classification

BOP Program Statement P5100.08 dated September 12, 2006 ("Statement P5100.08") provides the policies and procedures governing "Inmate Security Designation and Custody Classification" in BOP facilities. (SAC ¶¶ 22, 26-27; SAC Ex. E at 1). Statement P5100.08 was "created, authored, and implemented" by defendant Lappin, and "continues to be implemented and maintained" by defendant Samuels. (SAC ¶¶ 26-27). An inmate's custody location is primarily dictated by whether the security level and programming available at a particular BOP institution is appropriate considering the inmate's gender, security level, and "program needs," as well as the BOP's "mission to protect society." (SAC Ex. E1).

The BOP uses separate, yet similar, procedures for determining the security levels of male and female inmates.[2] (Statement P5100.08 [FAC Ex. B]). First, an inmate's "Security Point Total" is calculated based on the sum of three variables: (1) the inmate's "Base Score" (which reflects the sum of points assigned, in part, based on the inmate's severity of offense, months to release, criminal history,

---

[2]The BOP Security Designation and Custody Classification system for female inmates was redesigned in 1994, in part, in response to an Office of Research and Evaluation study ("ORE Study") which purportedly found, among other things, that:

    a.    many females with [Public Safety Factors] are housed in camps;

    b.    "history of violence" is the most powerful predictor of misconduct;

    c.    "severity of current offense" is ineffective for predicting misconduct;

    d.    females are less likely than males to escape and less likely to be convicted of serious misconduct; and

    e.    it is reasonable to house Minimum and Low security females together.

(SAC ¶ 45; SAC Ex. N). Plaintiff disputes the accuracy of the ORE Study and the propriety of BOP's reliance thereon. (SAC ¶¶ 45-48; Opp. at 14-16).

history of escape, violence or drug/alcohol abuse, age, and educational level);

(2) the inmate's "Custody Total" (points assigned for percentage of time served,

program participation, living skills, frequency and severity of disciplinary

incidents, and family/community ties); and (3) the applicable "Custody Variance."[3]

(Statement P5100.08 [FAC Ex. B at 261-76]).  An inmate's Security Point Total is

preliminarily "matched with a commensurate security level institution" as follows:

| Security Level | Custody Level | Male | Female |
|---|---|---|---|
| Minimum | Community and Out | 0-11 points | 0-15 points |
| Low | Out and In | 12-15 points | 16-30 points |
| Medium | Out and In | 16-23 points | N/A |
| High | In and Maximum | 24+ points | 31+ points |
| Administrative | All custody levels | All point totals | All point totals |

(Statement P5100.08 [FAC Ex. B at 214]).

Second, an inmate is then assigned a "Scored Security Level" based on the

inmate's "Security Point Total" and any applicable Public Safety Factor ("PSF").[4]

(Statement P5100.08 [FAC Ex. B at 259-60]).  There are four security levels for

male inmates (*i.e.*, "Minimum" for Security Point Totals in the range of "0-11",

"Low" for 12-15 total points, "Medium" for 16-23 points, and "High" for 24 points

or more).  (Statement P5100.08 [FAC Ex. B at 259]).  There are only three security

levels for female inmates (*i.e.*, "Minimum," "Low," or "High") determined by

three different ranges of Security Point Totals (*i.e.*, "0-15," "16-30," and "31+").

(Statement P5100.08 [FAC Ex. B at 260]).  The Scored Security Level will be

---

[3]The Male Custody Variance Table uses four ranges of possible base scores to determine
inmate custody "variance" (*i.e.*, "0-11," "12-15," "16-23," and "24+"), whereas the Female
Custody Variance Table uses three different base score ranges (*i.e.*, "0-15," "16-30," and "31+").
(Statement P5100.08 [FAC Ex. B at 275]).

[4]A Public Safety Factor is "relevant factual information regarding the inmate's current
offense, sentence, criminal history or institutional behavior that requires additional security
measures be employed to insure the safety and protection of the public."  (SAC Ex. B1).

higher for any inmate who has a PSF, although not all PSFs are applicable to both men and women.[5]  (Statement P5100.08 [FAC Ex. B at 259-60]).

Third, the BOP Designation and Sentence Computation Center ("DSCC") Administrator may assign a "Management Security Level" which "override[s]" an inmate's Scored Security Level when a particular inmate is placed at an institution with a security level that is inconsistent with the inmate's scored level because of some "Management Variable" (*e.g.*, a particular institution's proximity to the inmate's "release residence," the level of overcrowding at an institution with a matching security level, judicial recommendation of a specific institution or program, the inmate's medical or psychiatric needs, as well as other greater/lesser security concerns "not adequately reflected in the classification scheme"). (Statement P5100.08 [FAC Ex. B at 213-14, 248-53, 276]).

Finally, the "Unit Team and/or Warden" has the final authority to determine the inmate's custody location based on such official's "professional judgment . . . ."  (Statement P5100.08 [FAC Ex. B at 261-62]).  The final Scored Security Level reflected in an inmate's "Custody Classification Form" (BP-338) does not automatically "dictate[]" the BOP institution where an inmate will be placed, but instead simply recommends an inmate custody location that is consistent with BOP "guidelines."  (Statement P5100.08 [FAC Ex. B at 261-62]).

///

As noted above, an inmate's "Scored Security Level" will necessarily be higher where the inmate has a PSF, and not all PSFs are applicable to both male and female inmates.  (Statement P5100.08 [FAC Ex. B at 259-60]).  For example,

---

[5]PSFs of "Deportable Alien," "juvenile violence," "Sex Offender," "Serious Telephone Abuse," "Threat to Government Officials," "Prison Disturbance," and "Serious Escape" apply to any inmate.  (FAC Ex. B at 254-60).  "Greatest Severity Offense," "Disruptive Group," and "Sentence Length" PSFs apply to male inmates only; and the "Violent Behavior" PSF applies to female inmates only.  (Statement P5100.08 [FAC Ex. B at 254-60]).

the "Sentence Length" PSF in plaintiff's case is not a factor that would be used when determining the Scored Security Level of a female inmate. (Statement P5100.08 [FAC Ex. B at 259-60]). In addition, unless a PSF of sentence length has been waived, "[a] male inmate with more than ten years remaining to serve will be housed in at least a Low security level institution. . . ." (SAC Ex. B at 2).

### 3.    Plaintiff's Inmate Appeals

On May 25, 2012, plaintiff's case manager, Warren Doucet (not a defendant), provided plaintiff with a "Male Custody Classification Form" which stated that plaintiff had a security "Scored Level" of "Low" based on security total points of "+3" and a Public Safety Factor of "Sentence Length." (SAC ¶ 21; SAC Ex. A).

On June 21, 2012, plaintiff submitted a request to his case manager for informal resolution of a claim that the PSF of Sentence Length provided by Statement P5100.08 discriminated against plaintiff based on his gender, contrary to BOP policies and regulations and in violation of plaintiff's federal civil rights. (SAC Exs. F1-F2). Plaintiff essentially asked that the PSF of Sentence Length be removed from his Custody Classification Summary, or in the alternative, that the purportedly discriminatory policy in Statement P5100.08 be modified to reflect that all inmates with more than ten years remaining to be served, regardless of gender, must be housed in "at least a Low security level institution, unless the PSF has been waived." (SAC Exs. F1-F2). On July 5, 2012, Case Manager Doucet denied plaintiff's informal request essentially by restating the pertinent provisions in Statement P5100.08. (SAC Ex. G).

On July 6, 2012, plaintiff filed a Request for Administrative Remedy ("BP-9") with former FCI-TI Warden Conrad M. Graber (not a defendant) which essentially appealed the denial of his request for informal resolution of his gender discrimination claim. (SAC Exs. H1-H2, I). On July 25, 2012, former Warden Graber denied plaintiff's BP-9, noting that plaintiff was assigned a PSF of

Sentence Length pursuant to Statement P5100.08, but providing no explanation for the alleged gender discrimination in the BOP policies.  (SAC Ex. I).

On July 27, 2012, plaintiff filed a Regional Administrative Remedy Appeal ("BP-10") with the Western Regional Director (former defendant Castillo), appealing the denial of his BP-9.  (SAC Exs. J1-J2, K).  On August 22, 2012, Castillo denied plaintiff's BP-10, explaining, in part:

> Your appeal has been investigated.  Program Statement [P]5100.08 . . . states, "A Public Safety Factor (PSF) is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public."  As there are far fewer female offenders in custody than male, there are some differences in classification.  The differences in classification reflect there are fewer facilities for females and they have four security levels as opposed to five for males.  Additionally, there is a PSF that only applies to females.  Although there are slight differences in classification, no discrimination exists as both male and female offenders have equal opportunity to have the Public Safety Factors waived.  We concur with the Warden's response.

(SAC Ex. K).

On September 11, 2012, plaintiff filed a Central Office Administrative Remedy Appeal ("BP-11") appealing the denial of his BP-10.  (SAC Ex. L1-L2).  On June 7, 2013, former defendant Watts denied plaintiff's BP-11, essentially concurring with the reasoning of the two prior denials, and concluding that the

///

12

actions taken by BOP staff in plaintiff's case were "consistent with" the requirements of Statement P5100.08. (SAC Ex. M).

### 4. Claims for Relief

Very liberally construed, the Second Amended Complaint asserts that Statement P5100.08, on its face, improperly permits the "Sentence Length" PSF to be assigned solely to male inmates and thus contravenes BOP Program Statement 1040.04, dated January 29, 1999 ("Statement 1040.04"), and 28 C.F.R. § 551.90 ("Section 551.90") – each of which forbids discriminating against inmates based on their gender. (SAC ¶¶ 22-25; SAC Exs. C1-C4, D). Plaintiff, in turn, essentially alleges that his equal protection rights were violated because plaintiff, a male inmate, was assigned a Scored Security Level of "Low" and housed in a "Low" BOP institution based on his Security Point Total of +3 and PSF of Sentence Length (since plaintiff had more than ten years remaining on his sentence), while a female inmate with the same Security Point Total and same remaining sentence length would have only been assigned a Scored Security Level of "Minimum" and housed in a much less restrictive "Minimum" security level institution because the Sentence Length PSF is not used when determining the security level of female inmates. (SAC ¶¶ 1, 22-25, 45, 50, 55).

### C. Pertinent Law

#### 1. Bivens Claims

To state a claim for damages under Bivens, a plaintiff must allege that "a federal officer deprived [the plaintiff] of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citation omitted); see also West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). There is no vicarious liability in Bivens lawsuits. Iqbal, 556 U.S. at 676 (citing, *inter alia*, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official – whether subordinate or supervisor – may be held liable under Bivens only when his or her own actions have caused a constitutional deprivation.

13

OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.; internal quotation marks omitted), cert. denied, 134 S. Ct. 70 (2013).

## 2.   Fifth Amendment – Equal Protection

Equal protection claims relating to federal inmates arise under the Fifth Amendment Due Process Clause.  See Schlesinger v. Ballard, 419 U.S. 498, 500 n.3 (1975) (citations omitted); Lopez-Galvan v. Rubio, 2013 WL 6230265, *3 (E.D. Cal. Dec. 2, 2013) (federal prisoner's "due process and equal protection rights are guaranteed by the Fifth Amendment") (citations omitted).  "[T]he Fifth Amendment's Due Process Clause . . . subjects the federal government to constitutional limitations that are the equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment."  Stop H-3 Association v. Dole, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989) (citations and quotation marks omitted); see also United States v. Windsor, 133 S. Ct. 2675, 2695 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws.") (citations omitted).

Pursuant to the Equal Protection Clause of the Fourteenth Amendment, persons who are similarly situated must be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  The Constitution does not require individuals who are, in fact, differently situated, to be treated equally under the law.  Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 469 (1981) (citations omitted); Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection.") (citation omitted), cert. denied, 513 U.S. 1185 (1995).  Accordingly, absent a threshold showing that a plaintiff was similarly situated to others who allegedly received more favorable treatment, a complaint cannot state a viable equal protection claim.  See Michael M., 450 U.S. at 469 (citations omitted);

14

Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996) (citation omitted)); Hernandez v. Cate, 918 F. Supp. 2d 987, 1005-06 (C.D. Cal. 2013) (citations omitted); cf., e.g., Sessions v. Morales-Santana, 137 S. Ct. 1678, 1692 n.12 (2017) (suggesting that laws treating mothers and fathers differently regarding their relationship with a child may not violate equal protection where "'similarly situated' condition" not satisfied); Tuan Anh Nguyen v. Immigration and Naturalization Service, 533 U.S. 53, 63 (2001) (imposition of "different set of rules" for men and women to establish biological parenthood "neither surprising nor troublesome from a constitutional perspective" since fathers and mothers "not similarly situated with regard to [such] proof") (citation omitted).

Separate groups of individuals are "similarly situated" for equal protection purposes when their respective circumstances are basically "indistinguishable" or "in all relevant respects alike." Ross v. Moffitt, 417 U.S. 600, 609 (1974); Silveira v. Lockyer, 312 F.3d 1052, 1088 (9th Cir. 2002) (as amended) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)), cert. denied, 540 U.S. 1046 (2003), abrogated in part on other grounds, 554 U.S. 570 (2008). Whether a plaintiff and another group of inmates are similarly situated depends, in part, on the particular government action being challenged. Klinger, 31 F.3d at 731 (citation omitted). Thus, when conducting a "similarly situated inquiry," a court must first "precisely define" the plaintiff's claim in order to identify the various factors that must be considered when determining whether the plaintiff and another group of inmates are situated alike in the context of the particular government action at issue. See, e.g., Keevan, 100 F.3d at 648 (multiple factors considered in determining whether male and female inmates at different prison facilities were dissimilarly situated included "prison population size, average length of sentence, security classification, types of crimes, and other special characteristics") (citations omitted).

///

A prison policy that expressly treats similarly situated male and female

15

inmates differently can withstand a constitutional challenge only if the gender-based policy is "substantially related to achievement" of "important governmental objectives." See Craig v. Boren, 429 U.S. 190, 197 (1976) (citation omitted); Greene v. Tilton, 2012 WL 691704, *6, *8-*9 (E.D. Cal. Mar. 2, 2012) (applying Craig heightened scrutiny to evaluate inmate claim of gender discrimination), report and recommendation adopted, 2012 WL 1130602 (E.D. Cal. Mar. 29, 2012); see also Mississippi University for Women v. Hogan, 458 U.S. 718, 724 (1982) ("[T]he party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing [citations] . . . that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'") (citations omitted).

### D. Discussion

The Second Amended Complaint appears to challenge a single aspect of the BOP security level classification process in Statement P5100.08 – that is, the use of "Sentence Length" as a PSF only for classifying male inmates. (SAC ¶¶ 22-25; see Opp. at 10-13). The Second Amended Complaint does not state a viable equal protection claim against any defendant on such basis.

First, to the extent plaintiff suggests that his equal protection rights were violated in connection with the initial policy decision to not use sentence length as a PSF when classifying female inmates (SAC ¶ 45; See Opp. at 10-13), the Second Amended Complaint fails to state a viable Bivens claim. In some instances, male and female inmates may be considered similarly situated for equal protection purposes to the extent they allege differences in the *process* used for making initial policy decisions. Cf., e.g., Klinger, 31 F.3d at 733 n.4. Here, however, allegations in the Second Amended Complaint are insufficient to make the specific threshold showing required in this case – *i.e.*, that male and female BOP inmates were similarly situated with respect to policy decisions made during the process of

choosing the system the BOP uses for classifying male and female inmate security levels and related housing assignments. To the contrary, the Second Amended Complaint and exhibits attached thereto suggest that the BOP chose to use wholly separate formulas for determining male and female inmate security levels because there were multiple realistic factual differences between the male and female inmate populations in the BOP system overall. For example, as plaintiff concedes (SAC ¶ 49), there are fewer female inmates in federal custody than male offenders and fewer facilities for female inmates than male inmates.[6] Indeed, during the grievance process, a BOP official essentially explained that variations in the criteria used in those separate formulas reflect just such realistic differences (*i.e.*, "far fewer female offenders in [federal] custody" than male; "fewer facilities" for female inmates). (SAC Ex. K). Nothing in the Second Amended Complaint plausibly contradicts this explanation. Consequently, it is unsurprising that the BOP would choose to implement separate systems for classifying male and female inmate security levels and related housing assignments. Cf., e.g., Pitts v.

---

[6]Although the point is not disputed and requires no further support, the Court notes that BOP inmate statistics – proper subjects of judicial notice – bolster such conclusion and reflect that of the total 2017 inmate population, approximately 174,742 inmates (*i.e.*, 93.3%) are male, and only 12,640 (6.7%) are female. See Inmate Statistics (Inmate Gender), Federal Bureau of Prisons web site, available at https://www.bop.gov/about/statistics/statistics _inmate_gender.jsp. Such conclusion is further bolstered by the following statistics regarding the approximate number of non-administrative BOP facilities in which male and female inmates are housed which can be gleaned from BOP Program Statement 5100.05, dated June 16, 1994:

| Facility Security Levels | Total Facilities | Total Male | Total Female |
|---|---|---|---|
| Minimum | 48 | 43.5 | 4.5 |
| Low | 28 | 26 | 2 |
| Medium | 22 | 22 | 0 |
| High | 9 | 8 | 1 |

(See MTD Ex. D at 188-95).

Thornburgh, 866 F.2d 1450, 1458 (9th Cir. 1989) ("The fact that [] prison officials must make decisions within a larger context that includes gender-based separation bears upon and in part justifies the policy [of imprisoning long-term women offenders in a facility that is "considerably farther" from and more burdensome than facility where similarly situated male offenders are located]. In a variety of contexts, the existence of a classification which employs gender is justified when it is constructed with regard for some more pervasive institutional or social differentiation between the sexes.") (citations omitted). In addition, even if true, plaintiff's conclusory allegations that the "choice to assign a Public Safety Factor for Sentence Length to males only" was basically unsupported – i.e., based on "false data" in the ORE Study (SAC ¶¶ 45, 50) – do not satisfy plaintiff's affirmative burden to show that men and women are similarly situated under the circumstances of the instant case.

Moreover, the Second Amended Complaint also fails to allege non-conclusory facts which plausibly suggest that the choice not to use identical formulas for classifying male and female inmate security levels was the product of invidious gender discrimination rather than professional judgment in light of the realistic challenges of separately housing inmates of different genders. Cf. Rostker v. Goldberg, 453 U.S. 57, 79 (1981) ("The Constitution requires that Congress treat similarly situated persons similarly, not that it engage in gestures of superficial equality."); Michael M., 450 U.S. at 469 ("[B]ecause the Equal Protection Clause does not 'demand that a statute necessarily apply equally to all persons' or require 'things which are different in fact . . . to be treated in law as though they were the same,' [citations] . . . this Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.") (citations and internal quotation marks omitted). More specifically, nothing in the Second Amended Complaint plausibly suggests that the initial decision to use

18

sentence length as a PSF solely for male inmates was the product of "overbroad generalizations" about the abilities of men and women "fixed notions" about gender roles. <u>Sessions</u>, 137 S. Ct. at 1693 (citations and quotation marks omitted). Plaintiff's conclusory allegations that the decision to use sentence length as a PSF for males only was "the product of invidious discrimination" (SAC ¶ 50) does not plausibly show otherwise. Likewise, even if true, the fact that the BOP inmate classification formula contravenes Statement 1040.04 and 28 C.F.R. § 551.90 does not reveal any constitutional flaw in the decision not to use identical formulas for classifying male and female inmates. <u>See, e.g.</u>, <u>Cousins v. Lockyer</u>, 568 F.3d 1063, 1070 (9th Cir. 2009) (failure to follow internal state prison policies does not rise to the level of a federal constitutional violation).

Second, the Second Amended Complaint does not plausibly allege that plaintiff was similarly situated to any female inmate who received a more favorable housing assignment solely because the sentence length PSF was not used when classifying female inmates. In short, plaintiff does not identify any such similarly situated female inmate who actually exists. Plaintiff's speculation that he was treated less favorably than a hypothetical similarly situated individual is insufficient to state a <u>Bivens</u> claim. <u>See, e.g.</u>, <u>Waters v. Social and Health Services Dept.</u>, 2007 WL 2363057, *3 (W.D. Wash. Aug 15, 2007) (Section 1983 plaintiff cannot base viable claim of sex discrimination on "conjecture and speculation"); <u>see also</u> <u>Twombly</u>, 550 U.S. at 555 (factual allegations in complaint "must be enough to raise a right to relief above the speculative level") (citation omitted). Moreover, pursuant to Statement P5100.08, BOP inmate classification involves a complex analysis of multiple factors for both male and female inmates, and the final decision as to each inmate's security classification and custody location is ultimately purely discretionary. (SAC ¶¶ 22, 26-27; Statement P5100.08 [FAC Ex. B at 213-15, 245-79]). Where, like here, numerous variable factors might inform a prison official's decision, it is unlikely that a plaintiff could identify another inmate

who was similarly situated in *all material respects* for purposes of an equal protection challenge to the official's discretionary action. Cf., e.g., Fogle v. Pierson, 435 F.3d 1252, 1261 (10th Cir.) ("clearly baseless" to claim that there is some other inmate who is "similar in every relevant respect" to plaintiff for purposes of equal protection claim where challenged action involved discretion on the part of prison officials), cert. denied, 549 U.S. 1059 (2006); Klinger, 31 F.3d at 733 (female inmates failed to make threshold showing that they were similarly situated to male inmates who allegedly received better programs and services at different institution where "so many variables" affected the mix of programming prison officials provided at each institution, and thus comparing the programs at institutions for men with those at women's institutions resulted in "the proverbial comparison of apples to oranges" and improper "federal court scrutiny of prison officials' substantive administrative decisions"); Pitts, 866 F.2d at 1455 ("[T]he scrutiny to find a direct and substantial relation between the government's means and ends [for gender-based policy] must not substitute the court's presumed expertise for that of prison administrators as the court evaluates administrators' choices of one course over others. This acknowledgement of the difficulties inherent in the prison context does not reduce or eviscerate heightened scrutiny, but it does recognize that those difficulties do not disappear once a party raises a discrimination claim."). Accordingly, even if true, allegations that there are female inmates somewhere in BOP custody who have two of the same custody classification factors as plaintiff (*i.e.*, security point total of +3 and PSF of Sentence Length) do not plausibly suggest that plaintiff was "similarly situated" in all material respects to any such female inmates.

Even so, plaintiff fails plausibly to allege that any such similarly situated female inmate received a more favorable housing assignment than plaintiff. In fact, the Second Amended Complaint does not identify any BOP facility in which female inmates are housed, much less one at the "minimum" security level with

materially better conditions of confinement than plaintiff's at FCI-TI. Plaintiff attests that "being designated to a minimum prison facility is far more favorable, far safer, far less volatile and psychologically tolerable than being incarcerated and imprisoned together with violent offenders, gang members, sex offenders, and the typical profile of inmates that [he has] found to be prevalent at a low prison facility such as FCI Terminal Island." (Fishman Decl. ¶ 6). Nonetheless, plaintiff's observations of the differences between "minimum" and "low" security level institutions appear to be based solely on plaintiff's own "personal experience[s]" at FCI-TI and FPC-Eglin. (Fishman Decl. ¶¶ 1-2). Allegations that current conditions at FCI-TI – a "low" facility – are less favorable than those plaintiff experienced at FPC-Eglin – a "minimum" facility for male inmates where plaintiff was incarcerated for two weeks over twenty years ago – say little about the current conditions of any "minimum" facility in the BOP system, much less one to which any similarly situated female inmate was assigned.

Finally, the rambling "factual" allegations in the Second Amended Complaint are otherwise prolix, argumentative (SAC ¶¶ 25, 46-51), at times unintelligible (SAC ¶¶ 55, 62), and replete with immaterial background information (SAC ¶¶ 16-20), as well as duplicative, irrelevant, and conclusory factual and legal assertions (SAC ¶¶ 28-44, 52-54, 56, 63) which, on the whole, do nothing to plausibly connect any particular act or incident to a specific legal claim against any individual defendant, and consequently are insufficient to state any viable <u>Bivens</u> claim. Similarly, plaintiff's six conclusory "claim[s]" (SAC ¶¶ 64-91) provide no insight into any potential constitutional claim plaintiff is attempting to assert. <u>See</u> <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992) (Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim under Section 1983.) (citing <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic

recitation of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted); <u>Knapp v. Hogan</u>, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule 8 "short and plain statement" requirement "warrant dismissal") (citations omitted), <u>cert. denied</u>, 135 S. Ct. 57 (2014); <u>Stewart v. Ryan</u>, 2010 WL 1729117, *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims."). To the extent plaintiff suggests that he has stated a <u>Bivens</u> claim merely by referencing the Second Amended Complaint exhibits, he is incorrect. Again, it is not the Court's responsibility to sift through plaintiff's multiple exhibits more than it has already done so in an attempt to glean whether plaintiff has an adequate basis upon which to state any other claim for relief. <u>Cf.</u> <u>Gordon v. Virtumundo, Inc.</u>, 575 F.3d 1040, 1066 (9th Cir. 2009) ("[j]udges are not like pigs, hunting for truffles buried in briefs") (citation omitted); <u>Garst v. Lockheed-Martin Corp.</u>, 328 F.3d 374, 378 (7th Cir.) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited with approval in <u>Knapp</u>, 738 F.3d at 1111), <u>cert. denied</u>, 540 U.S. 968 (2003).

In light of the foregoing, dismissal of the Second Amended Complaint and denial of Defendants' Motion as moot are appropriate. While it is doubtful, in light of the history of this case, that plaintiff will be able to state a viable claim for relief, the Court will grant him one final opportunity to amend to attempt to do so.

## III. JOINDER MOTION

Plaintiff's Joinder Motion seeks to add fellow inmate Samuel Cohen as a plaintiff in the instant action. For the reasons explained below, the Joinder Motion is Denied.

A person may join an action as a plaintiff, in pertinent part, only if (1) he or she asserts a right to relief "arising out of the same transaction [or] occurrence," and (2) "[some] question of law or fact common to all plaintiffs will arise in the

22

action." Fed. R. Civ. P. 20(a); <u>Rush v. Sport Chalet, Inc.</u>, 779 F.3d 973, 974 (9th Cir. 2015) (citing <u>id.</u>). If such requirements are met, a district court must also consider whether permissive joinder would further "fundamental fairness," result in prejudice, and/or facilitate judicial economy. <u>See</u> <u>Visendi v. Bank of America, N.A.</u>, 733 F.3d 863, 870 (9th Cir. 2013) (citation and internal quotation marks omitted). District courts have broad discretion when ruling on a motion for permissive joinder. <u>See</u> <u>Corley v. Google, Inc.</u>, 316 F.R.D. 277, 282 (N.D. Cal. 2016) (citations omitted). Here, the Court is not persuaded that the permissive joinder as requested is appropriate.

First, although Mr. Cohen apparently desires to "enter the case" (Cohen Decl. ¶ 3), he did not personally file the Joinder Motion, and plaintiff may not represent Mr. Cohen. <u>See generally</u> <u>Simon v. Hartford Life, Inc.</u>, 546 F.3d 661, 665 (9th Cir. 2008) (*pro se* plaintiffs may not pursue claims on behalf of others in a representative capacity) (citations omitted).

Second, Mr. Cohen would not qualify for permissive joinder on the current record. At a minimum, even if plaintiff and Mr. Cohen raised claims with a common legal question, Mr. Cohen's asserted right to relief appears to arise out of an entirely different transaction or occurrence – *i.e.*, actions by one or more different individuals and/or involving an entirely different time period than alleged in the Second Amended Complaint. (Cohen Decl. ¶¶ 1-3).

Third, Mr. Cohen has not exhausted available administrative remedies for his claim (Cohen Decl. ¶ 5) – a mandatory prerequisite for all prisoner suits in federal court. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (citation omitted). Even if true, the fact that *plaintiff's* claim was rejected at each level of the administrative review process does not support plaintiff's contention that exhaustion of Mr.

Cohen's claim would be futile.  Cf., e.g., Porter, 534 U.S. at 524 (exhaustion mandatory prerequisite to civil rights suit "[e]ven when the prisoner seeks relief not available in grievance proceedings") (citation omitted).

Finally, Mr. Cohen also has not paid the full filing fee.  See generally Pinson v. Frisk, 2015 WL 738253, *6 (N.D. Cal. Feb. 20, 2015) (Prison Litigation Reform Act ("PLRA") requires each prisoner-plaintiff to pay full filing fee) (citing, in part, 28 U.S.C. § 1915(b)(1); Hubbard v. Haley, 262 F.3d 1194, 1196-97 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002); Treglia v. Kernan, 2013 WL 1502157, *1 (N.D. Cal. Apr. 11, 2013).  To the extent Mr. Cohen is currently unable to pay such fee in full or give security therefore, he must bring his own suit in federal court and request leave to proceed without full prepayment of fees in that separate action.  See, e.g., Hubbard, 262 F.3d at 1198 (dismissal of multi-plaintiff prisoner action proper based on district court ruling that individual prisoners must bring a separate suit in order to satisfy PLRA requirement that each prisoner pay the full filing fee); see also Treglia, 2013 WL 1502157 at *1 (PLRA provisions "suggest[] that prisoners may not bring multi-plaintiff actions, but rather must each proceed separately").

Accordingly, the Joinder Motion is denied.

## IV.  PETITIONS, SPEEDY HEARING MOTIONS, AND WRITS

Separate and apart from the Second Amended Complaint – which, as noted above, itself seeks declaratory relief (SAC ¶¶ 80-85) – plaintiff has filed Petitions purportedly seeking "Declaratory Judgment" on multiple broad legal and largely collateral issues, along with the Speedy Hearing Motions and Writs essentially seeking prompt hearings on the Petitions.  Such Petitions are denied for the

///

reasons explained below, and in light of such rulings, the Speedy Hearing Motions and Writs are denied as moot.

Title 28, United States Code, section 2201 provides that in a case of actual controversy within its jurisdiction, a court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. The statute is deliberately cast in terms of permissive, rather than mandatory authority, and accordingly, gives federal courts competence to make a declaration of rights, but does not impose a duty to do so. Government Employees Insurance Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (citations omitted). A district court must be satisfied that entertaining the matter is appropriate. Id. This determination is discretionary. Id.[7] Essentially, the district court must balance concerns of judicial administration, comity and fairness to the litigants. American State Insurance Co. v. Kearns, 15 F.3d 142, 144 (9th Cir. 1994) (citation omitted).

Here, to the extent the piecemeal Petitions even constitute "appropriate pleadings" through which "Declaratory Judgment" may be sought – a matter of significant doubt – the Court, after considering the appropriate factors and engaging in the aforementioned balancing, declines to exercise its discretion to grant the Petitions. Both Petitions appear to be focused on bolstering plaintiff's apparent contention that the defendants in this action are not entitled to be

---

[7]Relevant factors for a district court to consider in assessing whether to hear declaratory actions over which it has jurisdiction – factors which this Court has considered – include whether the declaratory action will settle all aspects of the controversy, whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue, whether the declaratory action is being sought merely for purposes of procedural fencing or to obtain a res judicata advantage, whether the use of a declaratory action will result in entanglement between the federal and state court systems, avoiding needless determination of state law issues, discouraging litigants from filing declaratory actions as a means of forum shopping, avoiding duplicative litigation, the convenience of the parties, and the availability and relative convenience of other remedies. Principal Life Insurance Co. v. Robinson, 394 F.3d 665, 672 (9th Cir. 2005) (citations omitted).

represented at federal government expense – a matter wholly collateral to the

merits of petitioner's asserted claims in the Second Amended Complaint.  The

Petitions seek "Declaratory Judgment" regarding, among other things, the

Supremacy of the United States Constitution, the obligation of federal officials to

uphold the Constitution, the composition, powers vested in, and limitations of the

federal legislature, federal regulations governing the circumstances under which

federal officials are/are not entitled to legal representation at federal government

expense and related certification/ decertification procedures requirements, and

plaintiff's asserted entitlement under federal law to seek judicial review of the legal

representation decision in this action.  As this Court has previously explained to

plaintiff in a separate action, he is not entitled to seek judicial review over the

decision of the United States to represent federal defendants at government

expense:[8]  "[U]nder [5 U.S.C.] § 701(a)(2) agency action is not subject to judicial

review 'to the extent that' such action 'is committed to agency discretion by law.'"

Lincoln v. Vigil, 508 U.S. 182, 190-91 (1993) (quoting 5 U.S.C. § 701(a)(2)).

Where a statute is drawn "so that a court would have no meaningful standard

against which to judge the agency's exercise of discretion . . . the statute ('law')

can be taken to have 'committed' the decisionmaking to the agency's judgment

absolutely.'"  Id. at 191 (quoting Heckler v. Chaney, 470 U.S. 821, 830 (1985)).

The Department of Justice's decision whether to represent a federal employee is a

matter of absolute discretion.  See also, e.g., Turner v. Schultz, 187 F. Supp. 2d

1288, 1294 (D. Colo. 2002) (stating Department of Justice has absolute discretion

regarding whether to provide representation pursuant to 28 C.F.R. § 50.15); Payne

v. Elie, 2012 WL 748285, *1 (D. Ariz. Mar. 7, 2012) ("The DOJ has unreviewable

authority to decide whether to represent a federal employee.").

---

[8] See August 3, 2017 Order Re: Motions for Sanctions, Reconsideration, and Speedy
Decision in Steven Fishman v. Washington-Adduci, et al., Case No. CV 13-04729 MWF(JCx),
Docket No. 156 at 8.

## V. ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1.     The Court adopts the First and Second Screening Orders.

2.     The Second Amended Complaint is dismissed with leave to amend. If plaintiff intends to pursue this matter, he shall file a Third Amended Complaint within twenty (20) days of the date of this Order which cures the pleading defects set forth herein.[9]  The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Third Amended Complaint if he elects to proceed in that fashion.

3.     In the event plaintiff elects not to proceed with this action, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

**4.     Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a Third Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with the Court's Order.**

_____

[9]Any Third Amended Complaint must:  (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Original Complaint, the First Amended Complaint or the Second Amended Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each individual defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption (Fed. R. Civ. P. 10(a)); and (h) not add defendants or claims without leave of court, cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).

1    5.    Defendants' Motion is denied as moot.

2    6.    The Joinder Motion, the Petitions, the Speedy Hearing Motions and

3 the Writs are denied.

4    IT IS SO ORDERED.

5

6 DATED: September 13, 2017

7

8 _____

9 HONORABLE MICHAEL W. FITZGERALD
10 UNITED STATES DISTRICT JUDGE

11 Attachments